IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAWANIA B. : | |
| : | |
| v. : | |
| : | NO. 25-CV-3047 |
| FRANK BISIGNANO, : | |
| Commissioner for Social Security : | |

**O P I N I O N**

SCOTT W. REID　　　　　　　　　　　　　　　　　　DATE:  January 30, 2026
UNITED STATES MAGISTRATE JUDGE

  Jawania B. brought this action under 42 U.S.C. §405(g) to obtain review of the decision of the Commissioner of Social Security denying her claim for Disability Insurance Benefits ("DIB"). She has filed a Request for Review to which the Commissioner has responded. As explained below, I conclude that the Request for Review should be denied and judgment granted in favor of the Agency.

I. *Factual and Procedural Background*

  Jawania B. was born on August 3, 1983. Record at 211. She completed two years of college. Record at 238. She served in the U.S. Navy for eight years as a boatswain's mate, and subsequently worked as a 911 operator and as a clerk in a liquor store. Record at 51, 238.

  On March 21, 2023, Jawania B. filed an application for DIB, alleging disability as of June 14, 2017, on the basis of post-traumatic stress disorder ("PTSD"), a bipolar disorder, high blood pressure, and a herniated disc in her back. Record at 211, 237. Her application was denied on May 24, 2023. Record at 109. It was denied again on reconsideration, on September 5, 2023. Record at 116.

Jawania B. then sought review *de novo* by an Administrative Law Judge ("ALJ"). Record at 139. A hearing before an ALJ was held on April 25, 2024. Record at 42. On May 31, 2024, however, the ALJ issued a written decision denying benefits. Record at 24. On April 25, 2025, the Appeals Council denied Jawania B.'s request for review, permitting the ALJ's decision to stand as the final decision of the Commissioner for Social Security. Jawania B. then filed this action.

II.     *Legal Standards*

The role of this court on judicial review is to determine whether the Commissioner's decision is supported by substantial evidence. 42 U.S.C. §405(g); *Richardson v. Perales*, 402 U.S. 389 (1971); *Newhouse v. Heckler*, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is relevant evidence which a reasonable mind might deem adequate to support a decision. *Richardson v. Perales*, *supra*, at 401. A reviewing court must also ensure that the ALJ applied the proper legal standards. *Coria v. Heckler*, 750 F.2d 245 (3d Cir. 1984).

To prove disability, a claimant must demonstrate that there is some "medically determinable basis for an impairment that prevents him from engaging in any 'substantial gainful activity' for a statutory twelve-month period." 42 U.S.C. §423(d)(1). Each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in §404.1590, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.

20 C.F.R. §404.1520(4) (references to other regulations omitted).

2

Before going from the third to the fourth step, the Commissioner will assess a claimant's residual functional capacity ("RFC") based on all the relevant medical and other evidence in the case record.  *Id*.  The RFC assessment reflects the most an individual can still do, despite any limitations.  SSR 96-8p.

The final two steps of the sequential evaluation then follow:

> (iv)  At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work.  If you can still do your past relevant work, we will find that you are not disabled.  (v)  At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work.  If you can make the adjustment to other work, we will find that you are not disabled.  If you cannot make an adjustment to other work, we will find that you are disabled.

*Id*.

III.    *The ALJ's Decision and the Claimant's Request for Review*

In her decision, the ALJ determined the last day Jawania B. was insured for DIB was September 30, 2020.  Record at 24.  The period under consideration ran from June 14, 2017, Jawania B.'s alleged disability date, through her date last insured.  *Id*.  To obtain benefits, therefore, Jawania B. had to prove that she was disabled on or before September 30, 2020.

The ALJ found that, during the relevant period, Jawania B. suffered from the severe impairments of degenerative joint disorder of the right shoulder, de Quervain tenosynovitis in the right arm, obesity, depressive disorder, bipolar disorder, and PTSD.  Record at 26.  She found, however, that no impairment, and no combination of impairments, met or medically equaled a listed impairment.  Record at 27.

The ALJ concluded that Jawania B. retained the RFC to engage in light work with the following limitations:

> [S]he could never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; frequently balance as defined in the *Dictionary of Occupational Titles* (DOT); frequently

3

> stoop; frequently kneel; frequently crouch; and frequently crawl.  The claimant could tolerate no more than moderate noise, as defined in the DOT, and never tolerate exposure to hazards, such as unprotected heights and moving mechanical parts.  She could frequently reach overhead and in all other directions and frequently push and/or pull with the dominant, right upper extremity.  She could understand, remember, and carry out simple instructions; occasionally interact with supervisors and co-workers; never interact with the public; and deal with occasional changes in a routine work setting.

Record at 30.

Relying upon the testimony of a vocational expert who appeared at the hearing, the ALJ concluded that, with this RFC, Jawania B. could have worked during the relevant time period as a cleaner, an assembler of small products, or a cleaner and polisher.  Record at 36.  She decided, therefore, that Jawania B. was not disabled.

In her Request for Review, Jawania B. argues that the ALJ's decision was a lay decision not supported by substantial evidence, because there was insufficient medical evidence in the record to permit a well-supported decision.  She argues that the ALJ failed in her duty to develop the record.  Specifically, she points out that the record contains no functional assessment, either physical or mental, from any medical professional.

IV.     *Discussion*

    A.     *The ALJ's Duty to Develop the Record*

Before determining whether substantial evidence supported the ALJ's RFC assessment, it should be noted that there is no valid claim that she failed in her duty to develop the record.  In a Social Security case, "[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits." *Sims v. Apfel*, 530 U.S. 103 (2000).  This is true even where the claimant is represented by counsel, because an administrative proceeding is not adversarial in nature.  *Felder v. Colvin*, Civ. A. NO. 16-1231, 2016 WL 8739674 at *3 (E.D. Pa. Nov. 1, 2016), *approved and adopted* 2017 WL 1397312 (E.D. Pa. Apr. 19, 2017); *Nguyen v.*

*Astrue*, Civ. A. No. 06-3343, 2008 WL 200175 at *4, n. 3; *Schwartz v. Halter*, 134 F. Supp.2d 640, 656 (E.D. Pa. March 8, 2001).

Nevertheless, the claimant still has the ultimate burden of producing sufficient evidence to show the existence of a disability. *Schwartz*, *supra*; 42 U.S.C. § 423(d)(5)(A) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Commissioner of Social Security may require."); 20 C.F.R. § 404.1512(a) ("[I]n general, you have to prove to us that you are ... disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s).").

In this case, Jawania B.'s counsel submitted over 1,200 pages of medical records. Record at 387-1607. Yet, counsel did not have any treating medical professional submit a function report, and he did not ask the ALJ's assistance in obtaining a function report from a treating professional. Neither did counsel request a consultative examination, either mental or physical, from the Agency. When a claimant is represented by counsel at the administrative level, an ALJ is "entitled to assume that the applicant is making his strongest case for benefits." *See Sergio R. v. Commissioner of Soc. Sec.*, Civ. A. No. 21-10280, 2022 WL 2357453 at *7 (D.N.J. June 30, 2022), *citing Glenn v. Secretary of Health and Human Services*, 814 F.2d 387, 391 (7th Cir. 1987).

In fact, when asked by the ALJ whether he was still waiting for any additional records, Jawania B.'s counsel replied that he was not: "I don't see any reason to keep the record open for additional records … ." Record at 48. Several cases in this Circuit have quoted *Maes v. Astrue*, 522 F.3d 1093, 1098 (10th Cir. 2008), in which the Court of Appeals for the Tenth Circuit stated: "Although the ALJ has the duty to develop the record, such a duty does not permit a

claimant, through counsel, to rest on the record – indeed, to exhort the ALJ that the case is ready for decision – and later fault the ALJ for not performing a more exhaustive investigation." *See*, *Parris v. Commissioner of Soc. Sec.*, Civ. A. No. 20-13454, 2023 WL 4702196 at *10 (D.N.J. July 24, 2023); *Alejandra D. v. Commissioner of Soc. Sec.*, Civ. A. No. 22-175, 2023 WL 2609134 at *8 (D.N.J. Mar. 22, 2023); *Wert v. Commissioner of Soc. Sec.*, Civ. A. No. 13-5705, 2015 WL 1808594 at *13 (E.D. Pa. Apr. 21, 2015).

Even now, Jawania B. has not pointed to any specific evidence which the ALJ would have seen had she sought a medical opinion. She has not, therefore, shown that additional development of the record would have led to a different result.

Thus, Jawania B. has no legitimate argument that the ALJ failed in her duty to develop the record. Despite this, if review reveals an evidentiary hole in the record which precludes the development of a well-supported RFC assessment, remand would still be necessary to obtain the required evidence. Therefore, even though Jawania B. has not criticized, or even discussed, the substance of the ALJ's decision, it must be determined whether the RFC assessment was supported by substantial evidence.

      B.    *The Absence of Medical Opinion Evidence*

The physical and mental medical experts who reviewed Jawania B.'s application for benefits, initially, and then at the reconsideration stage, all wrote that the available medical evidence was insufficient to permit them to assess her impairments for the relevant period. Record at 113 (Jennifer Croyle, Psy.D.), 113-4 (Mary Louise Gavin, M.D.), 119-120 (Angela Teresa Walker, M.D.), 121 (John David Chiampi, Ph.D.). Therefore, none of them submitted a functional assessment.

The record does not include any functional assessment from a treating medical practitioner.  Further, the agency did not send Jawania B. to a consultative examination, so there is no opinion from an independent consulting medical specialist, either.

According to Jawania B., "because the record contained no medical opinions concerning the impact of [her] impairments on her ability to work during the relevant period, the ALJ's residual functional capacity (RFC) finding could be based on nothing more than the ALJ's lay interpretation of the medical evidence." *Request for Review* at 4.

Yet, it is not clear whether an ALJ requires medical opinion evidence in order to support an RFC assessment.  Some cases decided in this Circuit support Browne's position, citing the statement of the Court of Appeals for the Third Circuit in *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986) that "no physician suggested that the activity [the claimant] could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by substantial evidence." These cases conclude that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."  *David K. v. Commissioner of Soc. Sec.*, Civ. A. No. 22-7491, 2023 WL 8827454, at *3–4 (D.N.J. Dec. 21, 2023); *Cerifko v. Kijakazi*, Civ. A. No. 20-1884, 2022 WL 737950, at *15 (M.D. Pa. Feb. 8, 2022), *approved and adopted* 2022 WL 737510 (M.D. Pa. Mar. 10, 2022); *McKean v. Colvin*, 150 F. Supp. 3d 406, 418 (M.D. Pa. 2015).

Other judges have disagreed, looking to the remark by the Court of Appeals for the Third Circuit in *Titterington v. Barnhart* that "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."  174 Fed. App'x 6, 11 (3d Cir. 2006); *Smith v. Berryhill*, Civ. A. No. 16-1844, 2018 WL 1442881 at *5-6

7

(M.D. Pa. Feb. 16, 2018), *approved and adopted* 2018 WL 1430938 (M.D. Pa. Mar. 22, 2018); *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214-15 (W.D. Pa. 2015) ("the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided").

Thus, it is not clear that an RFC assessment is defective merely because it is based on a record that does not include medical opinion evidence. In any event, the ultimate issue is whether the evidence which does exists permitted the ALJ to issue an RFC assessment which was supported by substantial evidence. 42 U.S.C. §405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive … "); *Richardson v. Perales*, 402 U.S. 389 (1971). The substantial evidence standard is not high. *Biestek v Berryhill*, 587 U.S. 97, 103 (2019). As explained above, it means only such relevant evidence as a reasonable mind might accept to support a conclusion. *Id.*; *Richardson*, *supra*.

    C.    *The ALJ's Decision is Supported by Substantial Evidence*

        1.    *The Physical Impairments*

The ALJ acknowledged that Jawania B. had severe impairments of the right arm.[1] Record at 26. On August 10, 2017, she underwent an extensive debridement of her right shoulder with a ligament release to address the De Quervain's tenosynovitis in her right wrist, as the ALJ recognized. Record at 31, 860, 872. The ALJ also recognized that treatment records showed that, although she initially reported improvement after the surgery, by June 22, 2018, she reported pain, with some numbness and tingling in her fingers. Record at 31, 860. She was given a steroid injection in the right thumb joint. Record at 31, 861.

---

[1] The herniated disc Jawania B. named in her application was first documented only after her date last insured. The ALJ explained that, for this reason, she would not consider it as a severe impairment in her decision. Record at 27.

8

On June 14, 2019, Jawania B. again sought treatment for pain, numbness, and tingling in her right hand. Record at 843. However, as the ALJ noted, an EMG taken at that time was normal, showing no evidence of neuropathy or radiculopathy. Record at 31, 844. As the ALJ also noted, there is no evidence of further treatment for musculoskeletal complaints until August, 2021, when Jawania B. was involved in a motor vehicle accident. Record at 31. This was, of course, outside of the time period under consideration.

The ALJ also noted that physical examinations in April and July, 2018, and August, 2019, were normal. Record at 34; 652 ("Back: full range of motion, straight leg raise to 90 degrees bilateral, no scoliosis, no kyphosis" August 7, 2019); 674 ("Ambulatory with steady gait. Good ROM in all extremities, no edema, no clubbing" April 4, 2018); 859 ("Musculoskeletal: Normal range of motion. She exhibits no edema. … Gait normal." July, 2018). The ALJ went on to consider Jawania B.'s testimony of extreme limitations arising from her physical symptoms, but relied upon the above medical evidence in concluding:

> [S]everal factors weigh against the alleged severity of these symptoms. First, the claimant had a good response to surgical intervention of her right upper extremity impairments. While she subsequently received a right thumb/carpometacarpal joint injection due to complaints of some numbness and tingling in her right wrists, there is no evidence of any substantial treatment for right upper extremity symptoms after June 2018.

Record at 33.

Nevertheless, the ALJ did not ignore Jawania B.'s right arm impairments; she limited her to light work with postural limitations, with frequent (but not constant) reaching, pushing and pulling with the right arm. Record at 30.

She wrote:

> Overall, through the date last insured, there is sparse evidence of medical treatment for her conditions to support a finding that the claimant is disabled. Nonetheless, in an abundance of caution, the undersigned accommodated the claimant's subjective

9

> weakness, pain, and systemic loss of endurance, whether related to underlying disease processes or medication side effects, as well as the cumulative effect of all medically determinable impairments, including those that are "non-severe," by limiting her to light work.

Record at 34.

Unquestionably, the ALJ's decision would have benefited from a medical report specifying how much Jawania B. could lift, carry, walk, and stand, to ensure that she met the requirements of light work. 20 C.F.R. §416.967(b). An ALJ is not a medical professional, and cannot make such findings for herself. Nevertheless, in this case only one arm was impaired, and the ALJ relied upon a complete lack of treatment for that arm during most of the relevant period, as well as a negative EMG of the hand, and normal medical examinations showing a full range of motion. This substantial evidence adequately supported the ALJ's conclusion that Jawania B.'s use of her right arm did not require limitations in excess of those the ALJ imposed in her RFC assessment.

2.  *The Mental Impairments*

The ALJ found Jawania B. to suffer from the severe mental impairments of depressive disorder, bipolar disorder, and PTSD. Record at 26. She determined that Jawania B. had a mild limitation in understanding, remembering, or applying information, and moderate limitations in interacting with others; concentrating, persisting or maintaining pace; and adapting or managing herself. Record at 28-9.

To address these mental health symptoms, the ALJ included in her RFC assessment a limitation to only work requiring simple instructions, occasional interaction with supervisors and co-workers, and no interaction with the public, as well as only occasional changes in a routine work setting. Record at 30.

In support of these limitations, the ALJ observed that a treatment note from a psychiatrist dated October 10, 2017, described Jawania B. has having depression, anxiety, a "voice in her head," paranoia, self-isolation, and insomnia. Record at 32, 710. A mental health examination revealed that she had a depressed mood and affect, and only fair insight and judgment. Record at 712. However, she was fully oriented, alert, and attentive, as well as pleasant and cooperative in behavior. *Id*. She had normal speech and movement, and no hallucinations, delusions, or paranoia at the time of examination. *Id*. Her thought processes and associations were "appropriate to clinical presentation," linear and goal directed, with no mania or psychosis. *Id*. At that time, Jawania B. had not taken medication for several months. Record at 720.

The ALJ described all of this in her opinion. Record at 32. She also noted that, when Jawania B. saw her psychiatrist on February 7, 2018, she reported that the medication prescribed in October, 2017, was helpful, but that once again she had been off of her medication for a month. Record at 32, 685. The psychiatrist restarted Jawania B. on medication, but then adjusted it later in February, 2018, because of complaints of increased anxiety and a PTSD flashback. Record at 32, 683. A treatment note from a primary care clinic dated April 4, 2018, stated that Jawania B. was alert and oriented, pleasant, cooperative, and appropriate, was able to answer questions appropriately, with clear, goal-oriented, and non-pressured speech. Record at 32, 675.

In summary, the ALJ wrote: "There is no evidence of the need for any inpatient or intensive outpatient mental health services, and treatment notes reflect stable mental health symptoms with medication. There is also no evidence of any substantial mental health treatment after April 2018." Record at 33.

Thus, Jawania B.'s lack of mental health treatment during most of the relevant period, as well as the indication in the treatment notes that her mental symptoms were most significant at times when she was off her medications, provided substantial evidence in support of the ALJ's mental RFC assessment.  Accordingly, there is no basis upon which this Court could disturb her decision.

V.      *Conclusion*

In accordance with the above discussion, I conclude that the Plaintiff's Request for Review should be DENIED, and judgment entered in favor of the Commissioner.


BY THE COURT:

*/s/ Scott W. Reid*

_____
SCOTT W. REID
UNITED STATES MAGISTRATE JUDGE